## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KENNETH MCCLAIN**                                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 14-1452**

**N. BURL CAIN, WARDEN**                        **SECTION "E"(2)**


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Kenneth McClain, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On November 16, 2007, McClain was charged by bill of information in Washington Parish with attempted first degree murder and being a felon in possession of a weapon.[3]  The Louisiana First Circuit Court of Appeal summarized the facts determined at trial as follows:

> Near midnight on September 17, 2007, Corporal Clay Arceneaux, with the Franklinton Police Department, was patrolling in a marked police unit on Alford Street in Franklinton, Washington Parish.  Corporal Arceneaux saw an unknown person, later identified as the defendant, standing on the corner of 15th Avenue and Alford Street.  The defendant, who was wearing a white muscle T-shirt and dark shorts, was talking on a cell phone as Corporal Arceneaux approached him.  When Corporal Arceneaux came within about a one-half block of the defendant, the defendant took off running.  Corporal Arceneaux radioed that he was in pursuit of a black male.
>
> Sergeant Ellis Norsworthy, with the Franklinton Police Department, was on Main Street in his patrol car when he received the call from Corporal Arceneaux.  When Sergeant Norsworthy approached near 15th Avenue and Dobson Street, he saw Corporal Arceneaux in pursuit on foot on Dobson Street.  Sergeant Craig James, with the Franklinton Police Department, also responded to Corporal Arceneaux's call.  Sergeant James was on duty and in uniform at the police station.  Sergeant James, along with Officer David Pettit, a volunteer reserve officer with the Franklinton Police Department, drove his unit to 16th Avenue.  At 16th Avenue and Alford Street, Sergeant James exited his unit and searched for the suspect on foot.  Moments later, while walking on Alford Street, Sergeant James spotted the defendant walking.  As Sergeant James approached the defendant, the defendant saw him and ran.  Sergeant James was not aware that he was chasing the defendant, whom he knew.  Sergeant James identified himself as the police and ordered the defendant to stop, to no avail.  A foot pursuit ensued.  Sergeant Norsworthy saw Sergeant James chasing the defendant.  He exited his

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 9, Bill of Information 11/16/07.

vehicle to join the foot pursuit, but lost sight of Sergeant James and the defendant as they ran behind a residence.

Lieutenant Justin Brown, with the Franklinton Police Department, remained at the police station when Corporal Arceneaux's call came in. When Sergeant James radioed the police station about the foot pursuit, Lieutenant Brown left to assist in the pursuit. As Sergeant James continued to chase the defendant, they ran past 16th Avenue and onto Alford Street. The defendant stopped in the front yard of his aunt's house on Alford Street. Sergeant James testified at trial that he approached the defendant and told him to get on the ground. The defendant turned sideways, or "bladed his body" toward Sergeant James in a defensive posture. Sergeant James could not see the defendant's hands. At this point as the defendant turned his face to Sergeant James, Sergeant James recognized that the person he was pursuing was the defendant. The defendant's shoulders moved in an upward direction, but the defendant did not get on the ground. Sergeant James removed his pepper spray and, as he sprayed the defendant, the defendant produced a gun and shot Sergeant James. Sergeant James fell to the ground and, while unable to move, heard three or more gunshots back to back. Sergeant James never pulled his gun. The defendant ran from the scene.

Corporal Arceneaux testified at trial that when he was on foot looking for the defendant, there were no other people on the street. Corporal Arceneaux was on Dobson Street when he heard the first gunshot. After a brief pause, he heard four more gunshots. He went back to his unit and drove toward the scene of gunfire. Sergeant Norsworthy testified at trial that as he headed on foot in the direction he saw Sergeant James running, he heard Sergeant James holler "stop." As Sergeant Norsworthy approached the rear of the residence of which Sergeant James and the defendant were standing in front, Sergeant Norsworthy heard a gunshot. He drew his weapon and, just as he began to move toward the front of the house, he heard four or five more gunshots in quick succession. Lieutenant Brown testified at trial that when he was walking toward his police unit to assist in the pursuit, he heard a gunshot. After a brief pause, he heard four more gunshots.

As Sergeant James lay on the ground from a bullet wound to his trapezius area, several officers, including Corporal Arceneaux and Lieutenant Brown, arrived to assist Sergeant James. Sergeant James told Corporal Arceneaux that "Pickle" shot him. Lieutenant Brown asked who "Pickle" was, and Sergeant James told him it was Kenneth McClain. Detective Richard Newman, with the Franklinton Police Department, went to the hospital to see Sergeant James. Sergeant James told Detective Newman that the defendant shot him and that he went by the nickname of "Pickle." The defendant testified at trial that his nickname was "Pickle." Sergeant James testified at trial that there was no question in his mind that the defendant shot him.

3

Shortly after Sergeant James was shot, the defendant called 911 and turned himself in.  The defendant was taken to the Franklinton Police Department, where he gave a recorded statement to Lieutenant Brown and Detective Newman.  In his statement, the defendant admitted that he had a gun, which he thought was a Hi-Point .40.  The defendant told the officers that when Sergeant James sprayed him with the mace, he put his hands over his eyes, and the gun, which the defendant was holding, went off.  However, he did not mean for Sergeant James to get shot.  After the first shot, the defendant heard two more shots and then ran.  No gun was found in connection with the shooting of Sergeant James.

The defendant testified at trial that he did not shoot Sergeant James.  He testified that he lied in his statement to Lieutenant Brown and Detective Newman because Lieutenant Brown had beat him up before the interview and told him what he needed to say in his statement.  The defendant testified that he did run from Sergeant James and Sergeant James did chase him.  According to the defendant, the reason he ran from Sergeant James was that he "was messing with his girlfriend."  The defendant testified that in the past, Sergeant James had been pulling him over and harassing him.  When Sergeant James caught up to him and maced him, they "tussled."  While they were fighting, the defendant heard shots ring out.  Sergeant James fell on top of the defendant.  The defendant pushed Sergeant James off of him and ran. The defendant testified that Sergeant James mistook the defendant's cell phone for a gun.

Larry Cotton, the only defense witness, was serving a sentence at the time he testified for possession with intent to distribute cocaine and illegal possession of a firearm.  He testified that on the night of the shooting, he was outside on Dobson Street where he lived.  He heard four or five gunshots about a block away.  Cotton saw people running.  He also saw the defendant running on Alford Street, being chased by police officers in a patrol car.  An officer exited the passenger side of the unit and chased the defendant on foot.  Cotton followed them until he saw the officer and the defendant stop in the yard on Alford Street.  The officer and the defendant began to "tussle."  During the scuffle, some unknown person with a gun came from behind a shed (or from inside the shed) out of the dark, approached the defendant and Sergeant James and fired two shots.  Cotton then went back to his house.  Cotton testified that he did not see the defendant with a gun.

State v. McClain, 58 So.3d 1154 (La. App. 1st Cir. 2011) (Table); State v. McClain, No.

2010-KA-1380, 2010 WL 1330161, at *1-3 (La. App. 1st Cir. Mar. 25, 2011); State

Record Volume 8 of 9, Louisiana First Circuit Opinion, 2010-KA-1380, pp. 2-6, March 25, 2011.

After being found competent to proceed, McClain was tried before a jury on July 14 through 17, 2009, and was found guilty as charged on both counts.[4] The state trial court denied McClain's motions for new trial and for post-conviction judgment of acquittal on August 4, 2009.[5] After waiver of sentencing delays, the court sentenced McClain that day to serve on count one forty (40) years in prison at hard labor without benefit of parole, probation or suspension of sentence.[6] For count two, the court sentenced him to 12½ years in prison at hard labor without benefit of parole, probation or suspension of sentence.  The court denied McClain's motions to reconsider the sentences.[7]

---

[4]St. Rec. Vol. 1 of 9, Hearing Minutes, 7/13/09; Trial Minutes, 7/14/09; Trial Minutes, 7/15/09; Trial Minutes, 7/16/09; Trial Minutes, 7/17/09; Jury Verdict (Count 2), 7/17/09; St. Rec. Vol. 2 of 9, Hearing Transcript, 7/13/09; St. Rec. Vol. 3 of 9, Hearing Transcript (continued), 7/13/09; Trial Transcript, 7/14/09; St. Rec. Vol. 4 of 9, Trial Transcript (continued), 7/14/09; Trial Transcript, 7/15/09; St. Rec. Vol. 5 of 9, Trial Transcript (continued), 7/15/09; Trial Transcript, 7/16/09; St. Rec. Vol. 6 of 9, Trial Transcript (continued), 7/16/09; Trial Transcript, 7/17/09; St. Rec. Vol. 7 of 9, Trial Transcript (continued), 7/17/09.

[5]St. Rec. Vol. 1 of 9, Sentencing Minutes, 8/4/09; Motion for New Trial, 7/30/09; Trial Court Order (undated); Motion for Post-Verdict Judgment of Acquittal, 7/30/09; Trial Court Order (undated); St. Rec. Vol. 7 of 9, Sentencing Transcript, 8/4/09.

[6]St. Rec. Vol. 1 of 9, Sentencing Minutes, 8/4/09; St. Rec. Vol. 7 of 9, Sentencing Transcript, 8/4/09; Motion to Reconsider Sentence, 8/4/09; Trial Court Order (undated).

[7]St. Rec. Vol. 3 of 5, Minute Entry, 9/14/09; Motion to Reconsider Sentence, 9/14/09; Trial Court Order, 9/14/09.

After a hearing on the multiple offender bill filed by the State, the state trial court sentenced McClain on October 7, 2009, as a second felony offender on count one to serve 60 years in prison at hard labor.[8] The court denied McClain's motion to reconsider that sentence.[9]

On appeal to the Louisiana First Circuit Court of Appeal, McClain's counsel asserted the following errors:[10] (1) The trial court erred by denying the motion to suppress the coerced confession. (2) The trial court improperly allowed testimony of other bad acts to be admitted at trial. (3) The evidence was insufficient to support the verdict. The Louisiana First Circuit affirmed the conviction and sentence on March 25, 2011, finding no merit in the claims.[11]

The Louisiana Supreme Court denied McClain's related writ application on October 14, 2011, without stated reasons.[12] His convictions became final ninety (90) days later, on January 12, 2012, when he did not file a writ application with the United

---

[8]St. Rec. Vol. 1 of 9, Multiple Offender Hearing Minutes, 10/7/09; Reasons for Judgment, 10/7/09.

[9]St. Rec. Vol. 1 of 9, Multiple Offender Hearing Minutes, 10/7/09; Motion to Reconsider Sentence, 10/7/09.

[10]St. Rec. Vol. 9 of 9, Appeal Brief, 2010-KA-1380, 11/4/10.

[11]McClain, 58 So.3d at 154 (Table); McClain, 2010 WL 1330161, at *1; St. Rec. Vol. 8 of 9, 1st Cir. Opinion, 2010-KA-1380, 3/25/11.

[12]State v. McClain, 74 So.3d 217 (La. 2011); St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2011-KO-0832, 10/14/11; La. S. Ct. Writ Application, 11-KO-832, 4/26/11 (dated 4/13/11).

States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

According to McClain, on September 18, 2012, he mailed an application for post-conviction relief to the  clerk of court for St. Tammany Parish, a different division of the 22nd Judicial District Court for Louisiana.[13]  McClain argued in the application that his trial counsel provided ineffective assistance when he waived a contradictory hearing on the issue of his sanity and failed to request a hearing pursuant to Daubert v. Merill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1983), on the qualifications of the lunacy commission doctors.

Several months later, on January 7, 2013, McClain filed a motion to supplement, dated November 7, 2013, and submitted a supplemental memorandum to the clerk of court in Washington Parish, the division of the 22nd Judicial District in which he was convicted.[14]  He included additional argument in the supplemental memorandum related to his claim that counsel provided ineffective assistance when he abandoned the insanity defense.  In the cover letter accompanying those pleadings, McClain wrote: "Please be

---

[13]St. Rec. Vol. 8 of 9, Application for Post-Conviction Relief, date 9/18/12; Letter from McClain, 9/18/12; Mail Receipt, 9/18/12.

[14]St. Rec. Vol. 8 of 9, Motion to Supplement, 1/7/13 (dated 11/7/13); Supplemental Memorandum, 1/7/13.

advised that my PCR was file[d] in the wrong court, it was sent to St. Tammany, I hope the clerk will transfer same [to] your court . . ."[15]

On May 2, 2013, the state trial court issued an order indicating in part that it would rule on the allegations submitted to the Washington Parish clerk and that the ruling also would be filed in that court:[16]

> On September 18, 2012, petitioner filed an Application for Post-Conviction Relief incorrectly with the St. Tammany Parish Clerk of Court, rather than the Washington Parish Clerk of Court.  The court will rule on the allegation, which will be filed in Washington Parish.

The court then denied relief, citing Strickland v. Washington, 466 U.S. 668 (1984), and finding that McClain failed to show deficient performance or denial of a fair trial when the lunacy commission found him competent to assist at trial.[17]

Several days after the court's ruling, McClain filed a second supplemental brief related to the abandoned sanity defense.[18]  On May 22, 2013, the state trial court directed that the pleading be filed and indicated that its prior ruling remained the same.[19]

---

[15]St. Rec. Vol. 8 of 9, Letter from McClain, 1/7/13.

[16]St. Rec. Vol. 8 of 9, Trial Court Order, 5/2/13.

[17]St. Rec. Vol. 8 of 9, Trial Court Order, 5/2/13.

[18]St. Rec. Vol. 8 of 9, Second Supplement to Post-Conviction Relief, 5/8/13.

[19]St. Rec. Vol. 8 of 9, Trial Court Order, 5/22/13.

The Louisiana First Circuit denied McClain's related writ application on September 23, 2013, without stated reasons.[20] The Louisiana Supreme Court also denied McClain's writ application on May 2, 2014, without stated reasons.[21]

## II.   FEDERAL HABEAS PETITION

On June 18, 2014, the clerk of this court filed McClain's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[22] (1) The state trial court erred in denying the motion to suppress the confession. (2) The state trial court erred in admitting other crimes evidence at trial. (3) The evidence was insufficient to support the verdicts. (4) Counsel provided ineffective assistance when he waived a contradictory hearing on the sanity defense. (5) Counsel provided ineffective assistance when he failed to request a Daubert hearing on the qualifications of the lunacy commission doctors.

The State filed an answer and memorandum in opposition to McClain's petition arguing that the petition should be dismissed as untimely or for failure properly to

---

[20]St. Rec. Vol. 8 of 9, 1st Cir. Order, 2013-KW-1061, 9/23/13; St. Rec. Vol. 9 of 9, 1st Cir. Writ Application, 2013-KW-1061, 6/19/13.

[21]State ex rel. McClain v. State, 138 So. 3d 1243 (La. 2014); St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2013-KH-2387, 5/2/14; La. S. Ct. Writ Application, 13-KH-2387, 10/8/13 (dated 10/2/13); St. Rec. Vol. 8 of 8, La. S. Ct. Letter, 2013-KH-2387, 10/9/13.

[22]Rec. Doc. No. 1.

exhaust state court review.[23]  Alternatively, the State argues that the claims are without merit.

III.    <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[24] and applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to McClain's petition, which, for reasons discussed below, is deemed filed in a federal court on June 18, 2014.[25]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in

---

[23]Rec. Doc. Nos. 14, 15.

[24]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert</u>. denied, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). The official stamp from the prison's Legal Programs Department reflects that McClain delivered his petition to prison officials on June 18, 2014, the same day it was emailed to the clerk of court for filing. Rec. Doc. No. 1, p.17.

state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that McClain's federal petition is untimely because he failed to file his first application for post-conviction relief in the proper state court.  The AEDPA requires a petitioner to bring his Section 2254 petition in most cases within one year of the date his conviction became final.[26] Duncan v. Walker, 533 U.S. 167, 179-80 (2001). The United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v.

---

[26]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
> A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
>
> C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
>
> D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999).  Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis added).  The Supreme Court has clearly described this provision as a tolling statute.  Duncan, 533 U.S. at 175-178; Flanagan, 154 F.3d at 199 n.1.

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing.  Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303,

306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).

Thus, as argued by the State, a pleading filed in the wrong court does not interrupt the AEDPA's one-year statute of limitations. Pace, 544 U.S. at 414; Williams v. Cain, 217 F.3d at 306-307 n.4 (quoting Villegas, 184 F.3d at 469); Smith, 209 F.3d at 384-85. In this case, however, the pleading was not filed in the wrong court.  It was in fact filed with Louisiana's 22nd Judicial District Court, a district comprised of both St. Tammany and Washington Parishes.[27]  McClain submitted his pleading to the parish clerk of court's office in St. Tammany Parish rather than Washington Parish.  Nevertheless, the state trial judge presiding over McClain's Washington Parish criminal proceedings recognized and accepted the filing made in the wrong clerk's office and ruled on the merits of the claims in that pleading as if they had been properly filed.

I find under these circumstances that McClain would be entitled to statutory tolling for the filing of the original application for post-conviction relief.  The State's limitations defense and calculation turned on the exclusion of the period during which the original application had in fact been filed and was pending.  I find that, when that period is included in the limitations calculation, McClain's federal petition was timely filed. The State's limitations defense therefore cannot be accepted.

---

[27]La. Rev. Stat. § 13:621.22; La. Rev. Stat. § 13:477(22) ("The parishes of Washington and St. Tammany shall compose the Twenty-Second District."

The State also contends that the ineffective assistance of counsel claims are not properly exhausted because of McClain's failure properly to file the original application for post-conviction relief.  "A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."  Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419.  "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims."  Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court."  Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan, 533 U.S. at 177-79.

I find that McClain has completed state court exhaustion.  He presented his claims to the 22nd Judicial District Court, and the presiding judicial officer ruled on the claims presented in the original application for post-conviction relief submitted to the

Washington Parish clerk's office.  In this case, the application was accepted by the state trial court as if properly filed, and it was addressed on the merits.  McClain also completed discretionary review of that ruling in the Louisiana First Circuit and the Louisiana Supreme Court.  The State's exhaustion defense cannot be accepted.

IV.   <u>STANDARDS OF A MERITS REVIEW</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), <u>cert. denied</u>, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]'" <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir.

2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert. denied</u>, 531 U.S.

849 (2000)), <u>aff'd in part, rev'd in part on  other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 412-13 (2000); <u>Penry v. Johnson</u>, 532 U.S.

782, 792-93 (2001);  <u>Hill</u>, 210 F.3d at 485.  The "critical point" in determining the

Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s

unreasonable-application clause if, and only if, it is so obvious that a clearly established

rule applies to a given set of facts that there could be no 'fairminded disagreement' on

the question." (citation omitted) <u>White v. Woodall</u>, __ U.S. __, 134 S. Ct. 1697, 1706-07

(2014) (citing <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011), and <u>Knowles v.

Mirzayance</u>, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale

before it can apply to the facts at hand,' then by definition the rationale was not 'clearly

16

established at the time of the state-court decision.'" <u>White</u>, 134 S. Ct. at 1706 (quoting

<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the state court decision applied [a Supreme

Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting <u>Woodford</u>

<u>v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>, 535 U.S.

685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only

question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert.</u>

<u>denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003).  The burden is on the petitioner

to show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25);

<u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

V.      <u>ANALYSIS</u>

A.      <u>DENIAL OF MOTION TO SUPPRESS CONFESSION (CLAIM NO. 1)</u>

McClain argues that the state trial court erred in denying the motion to suppress

the confession.  He alleges that Detective Brown handcuffed him and then repeatedly

beat him until he agreed to say what the detective told him to say.  McClain stated that

he signed the waiver of rights form because he was scared.  He also alleges that his eye

17

was permanently damaged during the incident with Detective Brown including a sensitivity to light requiring him to wear a patch over the eye. He claims, therefore, that the state trial court erred in denying the pretrial motion to suppress his confession.

McClain's appointed counsel asserted this issue on direct appeal to the Louisiana First Circuit, which held that the trial court did not err in denying the motion. The court thoroughly reviewed the testimony and evidence from the pretrial suppression hearing and trial and concluded that there was no evidence to support McClain's assertion that he was beaten or that his confession was coerced or improperly encouraged by the officers. The court held instead that McClain, after initially denying involvement in the shooting, changed his story and freely and voluntarily admitted his guilt upon hearing that skin tests proved he had been sprayed with pepper spray. This was the last reasoned state court opinion on the issue. See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The admissibility of a confession is a mixed question of law and fact. Miller v. Fenton, 474 U.S. 104, 112 (1985); ShisInday v. Quarterman, 511 F.3d 514, 522 (5th Cir. 2007) (citing Miller, 474 U.S. at 112). A federal court on habeas review must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); Barnes v. Johnson, 160 F.3d 218, 222 (5th Cir. 1998).  In doing so, a federal habeas court must afford a presumption of correctness to state courts' findings of fact if they are fairly supported by the record.  Miller, 474 U.S. at 117.

There are two inquiries to determine whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination.  Moran v. Burbine, 475 U.S. 412, 421 (1986); Soffar v. Cockrell, 300 F.3d 588, 592 (5th Cir. 2002). First, waiver of the right must be voluntary and not the product of intimidation, coercion or deception.  Moran, 475 U.S. at 421.  Second, the waiver or relinquishment must be made with full awareness of the nature of the right being waived.  Id.  In making these inquiries, the court must consider the "totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation."  Schneckloth v. Bustamonte, 412 U.S. 218, 224 (1973).  Although mental state or condition may be a significant factor in the voluntariness determination, "this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" Carter v. Johnson, 131 F.3d 452, 462 (5th Cir. 1997) (citing Colorado v. Connelly, 479 U.S. 157, 164 (1986)).  Thus, coercive police conduct is a necessary prerequisite to a

conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession. <u>Carter</u>, 131 F.3d at 462 (citing <u>Connelly</u>, 479 U.S. at 163-67).

In assessing voluntariness, "trickery or deceit is only prohibited to the extent it deprives the suspect 'of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" <u>Soffar</u>, 300 F.3d at 596 (quoting <u>Moran</u>, 475 U.S. at 424). Determining whether officers engaged in coercive tactics to elicit a confession is a question of fact, and the state court's factual findings are entitled to deference when supported by the record. <u>Pemberton v. Collins</u>, 991 F.2d 1218, 1225 (5th Cir. 1993); <u>Self v. Collins</u>, 973 F.2d 1198, 1204 (5th Cir. 1992); <u>see also Miller</u>, 474 U.S. at 112 (noting that subsidiary questions such as whether the police engaged in coercive tactics are afforded the presumption of correctness).

The habeas corpus statute obliges federal judges to respect credibility determinations made by the state court trier of fact. <u>Pemberton</u>, 991 F.2d at 1225 (citing <u>Sumner v. Mata</u>, 455 U.S. 591, 597 (1982)). However, if the underlying facts as determined by the state court indicate the presence of some coercive tactic, the impact that factor had on the voluntariness of the confession is a matter for independent federal determination and is ultimately a legal determination. <u>Miller</u>, 474 U.S. at 117; <u>ShisInday</u>, 511 F.3d at 522.

Even if the confession is deemed involuntary under these standards, the Supreme Court has held that the admission of an involuntary confession is a trial error subject to harmless error analysis.  Arizona v. Fulminante, 499 U.S. 279, 310 (1991).  Under these standards, to grant federal habeas relief, the trial error must have a substantial and injurious effect or influence in determining the verdict.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  Therefore, even if this court were to find that petitioner's Fifth Amendment rights were violated, the court must also consider whether use of the confession at trial was harmless in determining the verdict.  Hopkins v. Cockrell, 325 F.3d 579, 583 (5th Cir. 2003).

In McClain's case, as required by the United States Supreme Court in Jackson v. Denno, 378 U.S. 368 (1964), the state trial court conducted a full evidentiary hearing on the admissibility of the inculpatory statement made to the officers.[28] The state trial court received testimony from the officers and McClain and other evidence, including pictures of McClain, the waiver of rights form and the transcript of the confession.  The trial court concluded that the motion to suppress was not well-founded and the testimony regarding the alleged coercion was not credible.[29]

---

[28]St. Rec. Vol. 2 of 9, Hearing Transcript, 7/13/09.

[29]Id., pp. 12-15, 57-60, 100-01.

On direct appeal, the Louisiana First Circuit entered its own findings based upon the evidence and testimony from the suppression hearing and trial.  The appeal court referenced the evidence and testimony of the officers and McClain in detail and found the testimony of the officers credible. The court stated that the officers, including Lieutenant Brown, testified that no one, including themselves, mistreated, abused or threatened McClain in their presence.[30] The court found that the seven photographs taken by Lieutenant Brown and introduced into evidence at the motion to suppress hearing and trial were close-ups of McClain's face taken upon his return from the search for the gun. The court found that the pictures revealed no bruising, swelling or any other type of marking that might indicate McClain was beaten around the right eye or the right side of the face.  In addition, the notes and records from the ophthalmologist, Dr. Donald Bergsma, indicated that McClain refused to be examined and left without being seen.  Dr. Bergsma noted on the file, "We did not record recommending a patch for light sensitivity, although we would not dissuade it if the patient found comfort."[31]  This was found to be directly contrary to McClain's claim that the doctor told him to wear the patch indefinitely.

---

[30]McClain, 2011 WL 1330161, at *4-*5.

[31]Id., at *5.

The appeal court also reviewed the videotape of McClain's interview and found that during Detective Newman's questions, McClain "made very little to no eye contact with Lieutenant Brown."[32]   The court resolved that, "[r]ather than eye contact by Lieutenant Brown, and its attendant fear, causing the defendant to admit he shot Sergeant James, our appreciation of the cause of the defendant's admission was Detective Newman's informing the defendant that scientific evidence put him at the scene of the shooting."[33]   In addition, "[w]hen Detective Newman then told the defendant that he needed to be honest with them, the defendant, without a glance toward Lieutenant Brown, said he was just going to tell the truth because he had three kids and he wanted to be there for them."[34]

The appeal court found that the record established that McClain was advised of his <u>Miranda</u> rights before his confession and that his statement was made freely and voluntarily without influence of fear, duress, intimidation, menaces, threats, inducements or promises.   The court also found that McClain's testimony was "rife with inconsistencies" and his claims of being beaten and abused by Lieutenant Brown were

---

[32]<u>Id</u>., at *6.

[33]<u>Id</u>., at *6.

[34]<u>Id</u>., at *6.

"wholly unsupported by the testimonial and documentary evidence."[35]   The court ultimately resolved that after spending "the first twenty-eight minutes of a forty-one minute interview" denying any involvement, McClain "waived his rights and volunteered to talk"  finally confessing to the shooting only after he learned that his skin tested positive for pepper spray residue.[36]

On federal habeas review, this court must presume that the factual determinations made by the state courts were correct, including the finding that Lieutenant Brown did not beat McClain or coerce or promise him anything to compel him to make the otherwise voluntary statement.  The presumption of correctness also applies to the state court's factual findings concerning the voluntariness of the confession, including that McClain was advised of his Miranda rights, that he indicated that he understood his rights and that he voluntarily waived those rights before making his statement.  See Pemberton, 991 F.2d at 1225.

To overcome the presumption of correctness as to these findings, McClain must rebut them by clear and convincing evidence, which he has not done.  In his federal habeas petition, McClain merely repeats his allegations of abuse and coercion already

---

[35]McClain, 2011 WL 1330161, at *6; St. Rec. Vol. 8 of 9, 1st Cir. Opinion, 2010-KA-1380, p. 11-12, 3/25/11.

[36]McClain, 2011 WL 1330161, at *6; St. Rec. Vol. 8 of 9, 1st Cir. Opinion, 2010-KA-1380, p. 11-12, 3/25/11.

addressed by the state courts.  These allegations are unsupported by any evidence adduced at the motion hearing, at trial, on appeal or otherwise.

I have thoroughly read and reviewed the transcripts of the suppression hearing and trial and find that the state appeal court's determinations of voluntariness are adequately supported by the credible testimony and other evidence.  The detailed references to the transcripts and testimony provided in the Louisiana First Circuit's opinion are thorough and accurately reflect the actual statements made by the officers and McClain at both proceedings.  This court on habeas corpus review accepts as conclusive the state courts' factual determination that the challenged statement or confession was voluntary and was not a product of coercion.  Since the statement was voluntary, harmless error analysis is unnecessary.

Accordingly, the state courts' denial of relief on this issue is not contrary to or an unreasonable application of Supreme Court precedent.  McClain is not entitled to relief on this claim.

B.    OTHER CRIMES EVIDENCE (CLAIM NO. 2)

McClain argues that the state trial court erred in allowing the State to admit evidence of another, unrelated report of gunshots that occurred two days before the subject incident. He contends that the evidence was inappropriate to prove motive,

opportunity or intent under La. Code Evid. art. 404(b) and was irrelevant because he was never charged or arrested for the prior crime.

This claim was addressed by the Louisiana First Circuit in McClain's appeal. The court referenced the trial court's ruling issued after a pretrial hearing on the admissibility of the evidence.[37]  At that hearing, it was established that the police received a report of gunshots fired two days before Sergeant James's shooting.  McClain was a suspect in that incident.  After the James shooting, McClain initially told officers that he did not have access to a weapon and no weapon was recovered after the shooting.  The State discovered that the bullet casings retrieved from the earlier incident matched those recovered at the James shooting.  Apparently, because the gun used to shoot Sergeant James was never found, the State sought to use the evidence of the matching casings to link McClain to a weapon to establish opportunity.

At the admissibility hearing, the state trial court determined that the information about the prior shooting was admissible because McClain himself mentioned the prior shooting in his statements to police and indicated that he had to obtain a weapon because someone was out to get him just a few days before the James shooting.[38]

---

[37]St. Rec. Vol. 3 of 9, Hearing Transcript (continued), p. 101, 7/13/09.

[38]Id., pp. 111-12.

In reviewing the admissibility issue on appeal, the Louisiana First Circuit held that McClain made his identity as the shooter an issue for the jury.[39]  Therefore, the matched casings at both scenes were relevant to show his identity and opportunity to possess a firearm.  Finding no abuse of discretion by the state trial court, the appeal court found the claim meritless.  This was the last reasoned state court opinion on the issue.  Ylst, 501 U.S. at 802.

To the extent McClain argues that the evidence was admitted in violation of Louisiana law, that claim is not cognizable on federal habeas review.  See Swarthout v. Cooke, 526 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law).  Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Gonzales v. Thaler, 643 F.3d 425, 429 (5th Cir. 2011); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992).  The states are free to implement procedures regarding the admission of evidence, provided those procedures do not infringe on a constitutional guarantee.  Burgett v. Texas, 389 U.S. 109 (1967).

Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation

---

[39]McClain, 2011 WL 1330161, at *8; St. Rec. Vol. 8 of 9, 1st Cir. Opinion, 2010-KA-1380, p. 14-15, 3/25/11.

renders the criminal proceeding fundamentally unfair.  Lisenba v. People of the State of California, 314 U.S. 219, 236-37 (1941); Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.)  In keeping with this principle, the United States Court of Appeals for the Fifth Circuit has stated that a petitioner can obtain federal habeas corpus relief only if evidence is erroneously admitted and "played a crucial, critical, and highly significant role in the trial."  Gonzales, 643 F.3d at 430 (quotation omitted).  Under this standard, a habeas petitioner must establish that the evidence was both erroneously admitted and prejudicial.

Whether evidence is admitted or excluded contrary to the Due Process clause is a mixed question of law and fact.  Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir. 1997); see Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000) (issues of due process present mixed questions of law and fact.). This court on habeas review must determine if the state courts' denial of relief on the issue was contrary to or involved an unreasonable application of Supreme Court precedent.

In the instant case, the Louisiana courts found that the evidence of the prior shooting and matching casings was admissible.  Because of this finding under state law, McClain cannot show that evidence was erroneously admitted or that any due process violation occurred for this court to review.

Under Louisiana law, to constitute inadmissible other crimes evidence, the evidence must unambiguously implicate the defendant in an unrelated crime for the purpose of impugning his character before the jury.  State v. Edwards, 406 So.2d 1331, 1349 (La. 1981); State v. Holmes, 841 So.2d 80 (La. App. 4th Cir. 2003).  In State v. Prieur, 277 So.2d 126 (La. 1973), the Louisiana Supreme Court held that, while evidence of other acts of misconduct is generally not admissible to show the defendant's bad character, such evidence is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is part of the subject of the present proceeding.  See also, La. Code Evid. art. 404(B)(1); State v. Colomb, 747 So.2d 1074, 1075-76 (La. 1999); State v. Jackson, 625 So.2d 146, 148 (La. 1993).

In the last reasoned opinion on this issue, the Louisiana First Circuit held that the evidence, which was implicated by McClain's own statements, formed a part of the evidence necessary to establish McClain's identity and his connection to the weapon used in the James shooting.  As such, the evidence was admissible under Louisiana law.

The record establishes and the state courts held that the evidence was not introduced to impugn McClain's character or depict him as a bad man.  Instead, the testimony was properly admitted to establish matters essential to the charges and McClain's defenses, including his identity as the shooter.  See Robinson v. Whitley, 2

F.3d 562, 566 (5th Cir. 1993) ("One exception [under Louisiana law] permits evidence of other crimes to be admitted when it is probative of a defendant's identity.") (citing State v. Davis, 389 So.2d 71, 72-73 (La. 1980)).

McClain has not demonstrated that the evidence at issue constituted inadmissible other crimes evidence that rendered his trial fundamentally unfair.  Because he has not demonstrated any error in the admission of the evidence, he therefore "has no basis for any alleged due process violation."  Robinson, 2 F.3d at 567.  Without a due process violation, McClain has failed to present a cognizable basis for federal habeas corpus relief.  McClain is not entitled to relief on this claim.

C.    SUFFICIENCY OF THE EVIDENCE (CLAIM NO. 3)

McClain argues that the evidence was insufficient to support the verdicts because it failed to prove he had specific intent or the ability to shoot Sergeant James.  He contends that the State relied on his coerced confession without which there was no evidence to prove the charges.

McClain's counsel raised this claim on direct appeal to the Louisiana First Circuit.  Relying on the standards set forth in Jackson v. Virginia, 443 U.S. 307 (1979), and related state law, the court reviewed the testimony and evidence and found that there was sufficient evidence to sustain the convictions on both charges and that the jury acted

reasonably in assessing the credibility of the witnesses.  This was the last reasoned state court opinion on the issue.  Ylst, 501 U.S. at 802.

Under Jackson, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008); Williams v. Cain, 408 F. App'x 817, 821 (5th Cir. 2011).  To determine whether the guilty verdict is adequately supported by the evidence, the court must review the substantive elements of the crime as defined by state law.  Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n.16).  The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  See McDaniel v. Brown, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 F. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial") (quoting Jackson, 443 U.S. at 324).

Review of sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of witnesses, because those determinations are the exclusive province of the jury.  United States v. Young, 107 F. App'x 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993); see

31

Jackson, 443 U.S. at 319 (it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  A reviewing federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.  Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985).  Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.  Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).  In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.  Perez, 529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of the foregoing United States Supreme Court precedent.

McClain was charged with and convicted of the attempted first degree murder of Sergeant James and for being a felon in possession of a weapon.  Under Louisiana law, first degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm upon a peace officer engaged in the performance of

his lawful duties.  La. Rev. Stat. §14:30(A)(2).  Under La. Rev. Stat. § 14:27(A), a person attempts to commit a crime when he has the specific intent to commit the crime, does or omits an act for the purpose of and tending directly toward accomplishing the crime.

Thus, the specific intent to kill, and not just to cause great bodily harm, is an essential element of the crime of attempted murder.  State v. Butler, 322 So.2d 189, 192 (La. 1975); see also, State v. Brunet, 674 So.2d 344, 347 (La. App. 1st Cir. 1996).  Specific criminal intent "is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."  La. Rev. Stat. §14:10(1).  Under Louisiana law, specific intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions.  State v. Tate,  851 So.2d 921, 930 (La. 2003) (citing State v. Brooks, 505 So.2d 714, 717 (La. 1987)); State v. Cummings, 771 So.2d 874, 876 (La. App. 1st Cir. 2000).

As determined by the Louisiana First Circuit, the evidence, apparently found credible by the jury, established each of the elements of an attempted first degree murder.  The evidence established that McClain ran away when Corporal Arceneaux approached him in a marked police unit on the night in question.[40]  This led to a car and foot chase.[41]

---

[40]St. Rec. Vol. 4 of 9, Trial Transcript, p. 302 (Arceneaux), 7/15/09.

[41]Id., p. 303 (Arceneaux).

Arceneaux eventually was assisted in the foot pursuit by Officer Norsworthy and Sergeant James, who was on duty and in uniform.[42]   When Sergeant James spotted McClain, McClain saw him and ran, despite the Sergeant's orders to stop.[43] Sergeant James was closing on McClain, when McClain slowed down in the front yard of a house. Sergeant James continued to approach, instructing McClain to get on the ground.[44] Sergeant James was only about four feet from McClain at this time.[45]   Instead of lying on the ground, McClain took a defensive posture, and as he turned his head to look back, Sergeant James recognized him.[46]  When McClain's shoulders appeared to move up and down, Sergeant James sprayed him with pepper spray,[47] and McClain simultaneously produced a gun and shot Sergeant James.[48] Sergeant James fell to the ground.  He was unable to move and heard four more gunshots.[49]  Officer Norsworthy arrived in time to

---

[42]Id., pp. 305-306 (Arceneaux); p. 325 (Norsworthy); St. Rec. Vol. 6 of 9, Trial Transcript (continued), pp. 685-86 (James), 7/16/09.

[43]St. Rec. Vol. 6 of 9, Trial Transcript (continued), pp. 689, 690-91 (James), 7/16/09.

[44]Id., pp. 693-694, 698, 701-02 (James).

[45]Id., p. 703 (James).

[46]Id., pp. 703, 708 (James).

[47]Id., pp. 703-04 (James).

[48]Id., p. 704 (James).

[49]Id., p. 704-05 (James); St. Rec. Vol. 4 of 9, Trial Transcript, p. 307 (Arceneaux), p. 328 (Norsworthy), 7/15/09.

see McClain, wearing dark shorts and a white muscle t-shirt running from the scene of the shooting.[50]

While still on the ground at the scene, Sergeant James told Corporal Arceneaux and Lieutenant Brown that McClain, also known to him as "Pickle," was the shooter.[51] Sergeant James testified at trial that there was no question in his mind that McClain was the man that shot him.[52]

As recognized by the Louisiana First Circuit, while no gun was found, McClain told Lieutenant Brown and Detective Newman during his interview that he shot Sergeant James using a gun he thought to be a Hi-Point .40 caliber pistol. The testimony at trial revealed that the casings found at the scene were from a .40 caliber semi-automatic handgun, and that both a Hi-Point .40 and a Glock .40 are semi-automatic weapons.[53] The bullet removed from Sergeant James's body was a .40 caliber copper-jacketed lead bullet.[54]

Thus, the jury heard testimony that McClain was being chased on foot by Sergeant James. When McClain stopped running, he postured himself in a defensive manner to

---

[50]Id., p. 707 (James); St. Rec. Vol. 4 of 9, Trial Transcript, p. 332 (Norsworthy), 7/15/09.

[51]Id., pp. 710, 711 (James); St. Rec. Vol. 4 of 9, Trial Transcript, p. 311 (Arceneaux), p. 333 (Norsworthy), 7/15/09; St. Rec. Vol. 5 of 9, Trial Transcript (continued), p. 453 (Brown), 7/15/09.

[52]Id., p. 708 (James).

[53]St. Rec. Vol. 6 of 9, Trial Transcript (continued), pp. 637-639 (Acosta), 7/16/09.

[54]Id., p. 632 (Acosta).

confront Sergeant James.  When McClain began to move his arms instead of going to the ground, Sergeant James sprayed him with pepper spray.  McClain then revealed a gun and shot Sergeant James.  He fired several shots after the officer was down before he ran away.

Under these circumstances, it was entirely reasonable for the jury to find that McClain's defensive posture, allowing him to turn and point his gun at Sergeant James, demonstrated his specific intent to kill James.  The multiple shots were also indicative of McClain's specific intent.  In addition, McClain's clothing and shoes, including the t-shirt, were found to have gunshot residue on them, which proved that he was in very close contact with the weapon when it was fired.[55]  The close proximity between the shooter and victim was corroborated by the gun powder residue found on Sergeant James's shirt.[56]  McClain's proximity to the weapon and the distance between the weapon and the victim contradicted McClain's contention that there was another person who shot the sergeant from across the yard.  The fact that the jury did not find McClain or his defense witness to be credible is not for this court to question, especially because  the evidence otherwise supports the verdict of guilty of attempted first degree murder.

---

[55]St. Rec. Vol. 5 of 9, Trial Transcript (continued), pp. 426-428, 432 (Foster), 7/15/09.

[56]St. Rec. Vol. 6 of 9, Trial Transcript (continued), pp. 593-94 (Watson), 7/16/09.

The evidence was also sufficient to establish the second charge of felon in possession of a weapon.  In Louisiana, the offense of being a previously convicted felon in possession of a firearm is defined in part as follows: "It is unlawful for any person who has been convicted of ... any violation of the Uniform Controlled Dangerous Substances Law which is a felony ... to possess a firearm or carry a concealed weapon."  La. Rev. Stat. § 14:95.1.  To support a conviction for possession of a firearm by a convicted felon, the State must establish the following:  (1) possession of a firearm; (2) a prior conviction for an enumerated felony; (3) the absence of the ten-year statutory limitation period; and (4) the general intent to commit the crime.  State v. Caffrey, 15 So.3d 198  (La. App. 5th Cir.  2009); State v. Ray, 961 So.2d 607 (La. App. 2d Cir. 2007); State v. Robert, 956 So.2d 750 (La. App. 2d Cir. 2007).

As to the second element, "[t]he State must prove the [prior] felony conviction and that ten years has not elapsed since the date of completion of punishment."  State v. Knight, 738 So.2d 1179, 1181 (La. App. 5th Cir. 1999) (citations omitted).  Louisiana law provides that the cleansing period for a felon in possession "requires a determination of a ten-year period between the defendant's date of 'completion of sentence, probation, parole or suspension of sentence' and the time of the present possessory offense."  State v. Ostrom, 980 So.2d 890, 895 (La. App. 2d Cir. 2008).

In addition, specific intent is not necessary for a conviction of being a previously convicted felon in possession of a firearm.  Instead, general intent is all that is required, and it may be proved through either the actual or constructive possession of a firearm. State v. Law, 46 So.3d 764, 770 (La. App. 2d Cir. 2010); State v. Jamerson, 1 So.3d 827 (La. App. 2d Cir. 2009).  General intent also may be inferred from the circumstance of the event and proved by direct or circumstantial evidence.  State v. Brokenberry, 942 So.2d 1209 (La. App. 2d Cir. 2006); State v. Culp, 17 So.3d 429 (La. App. 2d Cir. 2009).

In this case, the trial transcript convincingly demonstrates that the evidence was more than sufficient to support the jury's verdict that McClain was a previously convicted felon in possession of a firearm.  The Louisiana First Circuit held that the guilty verdict as to the attempted murder charge necessarily meant that the jury found that McClain intended to and actually possessed the weapon that shot Sergeant James.

The jury also heard evidence that McClain had previously been convicted of possession of cocaine in 2007.[57] Cocaine is a Schedule II controlled dangerous substance under La. Rev. Stat. § 40:964(A)(4), the possession of which is a felony under La. Rev. Stat. § 40:967(C).  That felony conviction occurred within the same year as McClain's arrest on the charge at issue, and he was on probation for that conviction at the time of

---

[57]St. Rec. Vol. 5 of 9, Trial Transcript (continued), p. 388, (Boe), 7/15/09.

his arrest.  The evidence was therefore sufficient to establish the felon in possession charge.

For these reasons, McClain has not established that the state courts' denial of relief was contrary to, or an unreasonable application of, Jackson.  He is not entitled to relief on this claim.

D.    ASSISTANCE OF COUNSEL (CLAIMS NOS. 4 & 5)

McClain alleges that his trial counsel provided ineffective assistance when he waived the hearing on the issue of his competence.  He also complains that counsel was deficient when he failed to request a Daubert hearing to challenge the expertise and qualifications of the doctors appointed to assess his competence.

McClain asserted these claims in his state post-conviction application in the state trial court.  Relying on the Strickland standards, the court denied relief on both issues finding that McClain failed to prove that his counsel acted deficiently because the psychiatric reports reflected that McClain was competent to assist his counsel.  This was the last reasoned opinion on the claims.  Ylst, 501 U.S. at 802.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  Strickland, 466 U.S. at 697.

The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  <u>Id.</u> at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694; <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  <u>Kimler</u>, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under <u>Strickland</u>, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 693); <u>Harrington</u>, 562 U.S. at 112 (<u>Strickland</u> requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has recently clarified that, under <u>Strickland</u>, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." <u>Harrington</u>, 562 U.S. at 105.  The <u>Harrington</u> Court

went on to recognize the high level of deference owed to a state court's findings under

Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential."

Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1403 (2011) (quoting Knowles, 556

U.S. at 123). This court must therefore apply the "strong presumption" that counsel's

strategy and defense tactics fall "within the wide range of reasonable professional

assistance." Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable

unless clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain,

540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999).

In assessing counsel's performance, a federal habeas court must make every effort to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time

of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227

F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The record in this case reflects that, on April 24, 2008, McClain's appointed counsel filed an application for a hearing to determine both McClain's competence to assist in his defense and his mental condition at the time of the offense.[58]  As to the first aspect of this application; i.e., competency to assist counsel with the defense, the Constitution prohibits trial and conviction of a criminal defendant who is mentally incompetent to assist with his defense.  Cooper v. Oklahoma, 517 U.S. 348, 354 (1996); Drope v. Missouri, 420 U.S. 162, 171-172 (1975); Pate v. Robinson, 383 U.S. 375, 378 (1966); Carter, 131 F.3d at 459. As to the second aspect, i.e., sanity at the time of the offense, the affirmative defense of insanity requires the factfinder to determine whether, at the time of the offense, the defendant was incapable of appreciating the nature and wrongfulness of his conduct.  United States v. Levine, 80 F.3d 129 (5th Cir.), cert. denied, 519 U.S. 824 (1996); see also, La. Rev. Stat. § 14:14.

---

[58]St. Rec. Vol. 1 of 9, Application for Hearing, 4/24/08.

The state trial court appointed Rafael Salcedo, Ph.D., and Michelle Garriga, M.D.,

to evaluate McClain.[59]  To determine his competence, the doctors evaluated McClain

under the standards set forth by the Louisiana Supreme Court in State v. Bennett, 345

So.2d 1129 (La. 1977):

> The decision as to a defendant's competency to stand trial should not turn
> solely upon whether he suffers from a mental disease or defect, but must be
> made with specific reference to the nature of the charge, the complexity of
> the case and the gravity of the decisions with which he is faced.
> Appropriate considerations in determining whether the accused is fully
> aware of the nature of the proceedings include: whether he understands the
> nature of the charge and can appreciate its seriousness; whether he
> understands what defenses are available; whether he can distinguish a
> guilty plea from a not guilty plea and understand the consequences of each;
> whether he has an awareness of his legal rights; and whether he
> understands the range of possible verdicts and the consequences of
> conviction.  Facts to consider in determining an accused's ability to assist
> in his defense include: whether he is able to recall and relate facts
> pertaining to his actions and whereabouts at certain times; whether he is
> able to assist counsel in locating and examining relevant witnesses; whether
> he is able to maintain a consistent defense; whether he is able to listen to
> the testimony of witnesses and inform his lawyer of any distortions or
> misstatements; whether he has the ability to make simple decisions in
> response to well-explained alternatives; whether, if necessary to defense
> strategy, he is capable of testifying in his own defense; and to what extent,
> if any, his mental condition is apt to deteriorate under the stress of trial.

Id., at 1138 (citations omitted); see also, State v. Silva, 699 So.2d 487, 490-491 (La. App.

4th Cir. 1997).

---

[59]St. Rec. Vol. 1 of 9, Trial Court Order, 5/1/08

This standard is consistent with the two-part test recognized by the United States Supreme Court for ascertaining competency to assist in the defense and to stand trial: (1) whether the petitioner has the sufficient present ability to consult with his attorney with a reasonable degree of rational understanding; and (2) whether he has a rational and factual understanding of the proceedings against him.  Dusky v. United States, 362 U.S. 402, 402 (1960).

In his initial report, Dr. Salcedo noted that McClain had no history of psychiatric problems or treatment.[60]  After a full assessment, Dr. Salcedo found that McClain satisfactorily met the Bennett criteria and would undoubtedly be able to assist in his defense.  He indicated, however, that he did not have sufficient outside information on which to assess McClain's mental health at the time of the incident.  He made no finding on that issue.  After McClain complained of depression and other stressful issues while in jail, Dr. Salcedo re-examined him on June 13, 2008.[61]  Dr. Salcedo found that, while he was not comfortable at the jail, McClain still met the Bennett criteria and was competent to stand trial.

Dr. Garriga examined McClain on June 22, 2008, and reported that, while he was not doing well in the prison environment, McClain met the Bennett criteria for

---

[60]St. Rec. Vol. 1 of 9, Dr. Salcedo's Report, 5/13/08.

[61]St. Rec. Vol. 1 of 9,

competency to assist his counsel and proceed to trial.[62]  She reported that McClain also scored an 88 on the Georgia Court Competency Test, which carries a passing score of 70 or above.  She too indicated additional information was needed to evaluate McClain's mental state at the time of the offense, noting that he had no history of psychiatric episodes or treatment.

These physicians' reports were addressed by the state trial court at the hearing held July 13, 2009.[63]  At that time, McClain was represented by a different attorney from counsel who initially filed the application for sanity review.  The court asked counsel if there would be a stipulation that, if the doctors were called, they would testify in conformity with the reports.  McClain's counsel responded, "I have, Your Honor.  I've discussed it with my client and his family and we are willing to stipulate to Dr. Salcedo and Dr. Garriga."[64]  The court went on to find McClain competent to proceed to trial.[65]

The court noted, however, that the doctors were unable to address the issue of McClain's mental condition at the time of the offense.  The court inquired of counsel whether any additional information had been developed.  Counsel replied that nothing

---

[62]St. Rec. Vol. 1 of 9, Dr. Garriga's Report, 6/22/08 (filed 7/15/08).

[63]St. Rec. Vol. 1 of 9, Hearing Minutes, 7/13/09; St. Rec. Vol. 2 of 9, Hearing Transcript, p. 3-4, 7/13/09.

[64]St. Rec. Vol. 2 of 9, Hearing Transcript, p. 4, 7/13/09.

[65]Id., p. 4.

had been developed nor did McClain have any mental health issues or treatment that would warrant a change in the plea to one of not guilty and not guilty by reason of insanity.[66]  Counsel withdrew the motion as it related to the issue of McClain's mental capacity at the time of the incident.[67]

McClain argues that counsel's decision to withdraw that portion of the motion was deficient performance.  In Louisiana, a legal presumption exists that a defendant is sane at the time of the offense.  La. Rev. Stat. § 15:432.  To rebut the presumption of sanity and avoid criminal responsibility, a defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence.  La. Code Crim. P. art. 652.  The defense of insanity is defined by La. Rev. Stat. § 14:14:

> If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.

Under Louisiana law, "[c]riminal responsibility is not negated merely by the existence of a mental disease or defect . . .."  State v. Williams, 346 So.2d 181, 186 (La. 1977).  A mental disease or disorder short of legal insanity is insufficient to support an insanity defense.  Id.; see also, State v. Koon, 704 So.2d 756, 768 (La. 1997); State v. Weber, 364 So.2d 952, 956 (La. 1978).

---

[66]Id., p. 5.

[67]Id., pp. 5-6.

In McClain's case, the motion filed by his prior counsel did not provide any reasons for the request to have his sanity at the time of the offense evaluated. His trial counsel, however, indicated that he discussed the issue with McClain and could find no basis to pursue the insanity defense or change the plea to the charges.

While the evaluating doctors did not offer an opinion on McClain's sanity at the time of the offense, the history reported by McClain to the doctors did not indicate any prior mental health problems or treatment. This is consistent with the conclusion reached by counsel. Even now, McClain has offered nothing that would indicate that his counsel had any bases to suspect McClain did not understand right from wrong on the night of the shooting.

Furthermore, McClain's alleged learning problems mentioned in the doctors' reports or any mental health issue short of insanity as defined above would not have been a defense to his guilt under Louisiana law. See State v. Pitre, 901 So.2d 428, 444 (La. App. 1st Cir. 2004).

> A mental disease or defect short of insanity cannot serve to negate an element of the crime. For that reason, such evidence is not relevant to the issue of a defendant's guilt or innocence. Moreover, evidence of a mental disease or defect affecting defendant at the time of an offense is inadmissible, whether it is an organically caused mental condition or a psychologically or emotionally induced mental condition.

(citations and footnote omitted) Id., at 444.

Louisiana law would not have allowed McClain's counsel to assert a defense based on any mental disability short of actual insanity as defined above. Counsel advised the court that he had no reason to question McClain's sanity after discussing the matter with McClain. Counsel was not unconstitutionally deficient in his performance when he failed to pursue such a baseless defense. Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998).

Counsel also was not deficient in failing to request a Daubert hearing on the qualifications of the sanity commission doctors. In Daubert, the United States Supreme Court supplanted the "general acceptance" standard of expert testimony with a standard that charges the trial court to act as "gatekeeper" ensuring the relevance and reliability of scientific expert testimony. Daubert, 509 U.S. at 592. Once that testimony is admitted at trial, it is for the jury to resolve the credibility and the reliability of the expert's testimony. "'[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" (emphasis in original) Primrose Operating Co. v. Natl. American Ins. Co., 382 F.3d 546, 562 (5th Cir. 2004) (quoting United State v. 14.38 Acres of Land, 80 F.3d 1074, 1077 (5th Cir. 1996)).

I have located no precedent that would specifically apply these gatekeeping duties as a constitutional matter for habeas corpus purposes to the pretrial assessment of doctors

assigned to a sanity commission or their findings outside of a trial setting. Assuming Daubert could apply, an expert's opinion must have a "reliable basis in the knowledge and experience of his discipline." Daubert, 509 U.S. at 592. "As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function." Rushing v. Kansas City S. Ry. Co., 185 F.3d 496, 507 (5th Cir. 1999) (citing Daubert, 509 U.S. at 596).

Generally, a physician's knowledge, training, and education in the fields of medicine will be sufficient predicate to allow the physician to testify, even outside his area of specialty. United States v. Viglia, 549 F.2d 335, 337 (5th Cir. 1977). "Under the general principles of evidence law, [a physician] is qualified to give a medical opinion as to [a person's] mental state . . .." Sprague v. Brown, 812 F.2d 1226, 1232 (9th Cir. 1987). Daubert is clear that critiques of the substance of an expert's testimony and conclusions go to the weight of the testimony, not its admissibility. See United States v. Valencia, 600 F.3d 389, 421 (5th Cir. 2010).

The Louisiana Supreme Court has adopted the Daubert analysis, State v. Foret, 628 So.2d 1116, 1121, 1123 (La. 1993), in instances where the methodology used by an expert is being questioned. Dinett v. Lakeside Hospital, 811 So.2d 116, 119 (La. App. 4th Cir. 2002). However, this is not the challenge being made by McClain. In this case,

McClain is challenging the constitutional effectiveness of his counsel's failure to question the qualifications of the two doctors to sit on the sanity commission.

The state trial court appointed Dr. Salcedo and Dr. Garriga to evaluate McClain's competence and mental state. The appointment was governed by the statutory provisions applicable to sanity commissions in La. Code Crim. P. art. 644(A) which provides:

> The sanity commission shall consist of at least two and not more than three members who are licensed to practice medicine in Louisiana, who have been in the actual practice of medicine for not less than three consecutive years immediately preceding the appointment, and who are qualified by training or experience in forensic evaluations. The court may appoint, in lieu of one physician, a clinical psychologist or medical psychologist who is licensed to practice psychology in Louisiana, who has been engaged in the practice of clinical or counseling psychology for not less than three consecutive years immediately preceding the appointment, and who is qualified by training or experience in forensic evaluations.

McClain has not established that the commission doctors failed to meet the qualifications necessary to be on his sanity commission or that counsel had any reason to question their qualifications.

Dr. Garriga's report reflects that she held a degree as a medical doctor and was an assistant clinical professor at Tulane University Medical School at the time she evaluated McClain. My research reflects that Dr. Garriga has been recognized as a forensic psychology expert and has participated in sanity commissions by appointment of Louisiana courts since at least 2006. See, e.g., State v. McCray, No. 2011-KA-1913, 2012 WL 1552257, at *4 (La. App. 1st Cir. 2012) (discussing Dr. Garriga's 2006 sanity

commission report on the defendant's competence); State v. Davis, No. 2011-KA-990, 2012 WL 638492, at *8 (La. App. 1st Cir. 2012) (Dr. Garriga and Dr. Salcedo were appointed to a sanity commission for sentencing purposes in 2010). These factors establish that Dr. Garriga met the criteria under state law to be a member of the sanity commission, and as a medical doctor she was otherwise qualified to render an opinion on McClain's mental state.

Dr. Salcedo identified himself in his report as a Ph.D. and forensic psychologist. My research reflects that Dr. Salcedo has participated as a member of numerous sanity commissions and has qualified as a forensic psychology expert in Louisiana courts dating back at least to 1996. See, e.g., State v. Carson, No. 2009-KA-1577, 2010 WL 559731, at (La. App. 1st Cir. 2010) (Dr. Salcedo was accepted as an expert in forensic clinical psychology); State v. Laviolette, 943 So.2d 527, 529 (La. App. 5th Cir. 2006) (Dr. Salcedo testified as a member of the sanity commission); State v. Preston, 752 So.2d 211, 220 (La. App. 4th Cir. 1999) (counsel stipulated to Dr. Salcedo as an expert in forensic psychology); State v. Levy, 700 So.2d 1283 (La. App. 1st Cir. 1997) (Dr. Salcedo issues a report and testified at the sanity hearing in 1996). This history establishes that Dr. Salcedo met the criteria under state law to participate on McClain's sanity commission.

The backgrounds and reported experience of the two doctors left no reason for McClain's counsel to question their qualifications to participate on the commission or

to assess McClain. In addition, under Louisiana law, the "[s]election of physicians to serve on a sanity commission rests within sound discretion of the trial judge." (internal quotations omitted) State v. Raines, 101 So.3d 593, 603 (La. App. 3rd Cir. 2012) (quoting State v. Vince, 305 So.2d 916, 919 (La. 1974)).  Counsel would have had no basis under Louisiana law to challenge the court's decision to select Drs. Garriga and Salcedo for the commission.  Counsel is not required to make frivolous or futile motions or objections.  Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990).  "The failure to raise meritless objections is not ineffective lawyering; it is the very opposite."  Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994).

McClain has failed to establish that his counsel acted outside of reasonable performance or caused any prejudice to the defense in failing to request a Daubert hearing to challenge the qualifications of Dr. Garriga or Dr. Salcedo as experts in forensic psychiatry and forensic psychology. The denial of relief on his ineffective assistance of counsel claim was not contrary to or an unreasonable application of Strickland.  McClain is not entitled to relief.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that McClain's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED AND DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[68]

New Orleans, Louisiana, this _____26th_____ day of May, 2015.

_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[68]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.